Potts v. New Jersey Arms and Ordnance Co.

---

WILLIAM H. POTTS *vs.* THE NEW JERSEY ARMS AND ORD-
NANCE COMPANY.

1. Under the act of March 13th, 1866, (*Pamph. L.* 296,) the receiver should be vested with large discretionary powers as to the *mode* of sale.

2. The act of March 13th, 1866, investing the Court of Chancery with the power to order the property of an insolvent corporation, encumbered with mortgages or other liens, the legality of which is brought in question, &c , to be sold clear of encumbrances, is not in violation of the constitutional provision, forbidding the passage of a law impairing the obligation of contracts, &c. *Const., Art. IV, sec. VII, ¿* 3. It neither impairs the obligation of contracts, nor deprives the creditor of any previously existing remedy.

3. A remedial statute, superseding a remedy in force at the time of making a contract, and giving the party satisfaction in a shorter time and more direct mode, does not *deprive* him of a previously existing remedy.

4. Property, ordinarily treated as personal, is often annexed to and passes with the realty as fixtures, where it manifestly appears from the description and terms of the instrument, that such was the intention of the parties.

5. The registration of a chattel mortgage is not necessary to pass the interest in machinery fixed to the soil, and comprehended in a mortgage of the realty, where it is the intention of the parties, as shown by the terms of the instrument, that the machinery should pass with, and as a part of the freehold.

Upon bill filed, "the New Jersey Arms and Ordnance Company" was, on the 4th day of April, 1865, declared insolvent, and a receiver appointed, in pursuance of the statute in this state, entitled "An act to prevent frauds by incorporated companies," (*Nix. Dig.* 371). By this decree, operating as a statutory assignment, all the property of the company, real and personal, passed to the receiver, subject to the liens then existing.

The factory and buildings of the company, situate in the city of Trenton, with the machinery, fixtures, tools, &c., therein, were, at the time they passed into the hands of the receiver, subject to two mortgages; the first, given by the Trenton Locomotive and Machine Manufacturing Company, formerly holding the premises, dated April 1st, 1856, to Joseph G. Brearley, trustee, &c., purporting to secure the payment of fifty bonds, of one thousand dollars each; the second, by the New Jersey Arms and Ordnance Company, to Joseph G. Brearley, trustee, &c., dated October 5th, 1864, to secure one hundred bonds, of the sum of one thousand dollars each, and fifty bonds, of the sum of five hundred dollars each, amounting, in the aggregate, to one hundred and twenty-five thousand dollars. The obligation of these mortgages, and of the bonds which they purport to secure, (thirteen bonds under the first mortgage only excepted), are called in question in the bill filed.

An application was made to the Chancellor, on the petition of the complainant, for an order to direct the receiver to sell and dispose of the real and personal property of the

company, free of the encumbrances of the said two mortgages, the proceeds of such sale to be paid into court to abide the event of the suit.

The Chancellor denied the application, on the ground that such order was not within the power of the court. This opinion has been sustained by the Court of Appeals.

By an act approved March 13th, 1866, (*Pamph. L.* 296), it was enacted, that where the property of an insolvent corporation, in the hands of a receiver under the act, is encumbered with mortgage or other liens, the legality of which is brought in question, and the property is of a character materially to deteriorate in value pending the litigation, the Court of Chancery may order such receiver to sell the same, clear of encumbrance, at public or private sale, for the best price that can be obtained, bringing the money into court, there to remain, subject to the same liens and equities of all parties in interest as was the property before it was sold, to be disposed of as the court, by its decree, should order and direct.

Subsequent to the passage of this act, the receiver filed his petition, in which, after setting forth that, as receiver, he came into possession of the real and personal estate of said company, consisting of the armory buildings, machinery, &c., and a large amount of personal property, &c., subject to said two mortgages, that the legality of the liens of said mortgages is one of the principal matters in dispute in the cause, and that the said last mentioned mortgage had, on January 30th, 1865, been filed as a chattel mortgage in the office of the clerk of the county of Mercer, but that the same had not been re-filed within the time limited by the act, but was re-filed February 5th, 1866, the receiver prayed the instruction of the court, whether the lien of the said last mentioned mortgage, so far as respects the personal property, is not lost or destroyed, and whether he may not sell and dispose of the same, according to the statute, free of encumbrance.

The receiver, further alleging that the said property, real and personal, was rapidly depreciating in value, and that it

could then be sold to more advantage than thereafter, further prayed the court for authority to sell the same, free of encumbrance, the proceeds to be paid into court, to abide its order.

A rule was granted to show cause why the said application should not be granted, with leave to take affidavits, &c.

Affidavits were taken, and the motion argued before Thomas P. Carpenter, esq., one of the masters of the court, sitting for the Chancellor.

*Mr. Van Syckel* and *Mr. Browning,* (with whom was *Mr. E. T. Green*), for petitioner.

*Mr. J. T. Williams,* (of New York); contra.

THE MASTER. I find no technical difficulty in hearing this motion, on the ground of *res judicata,* suggested by the counsel of the mortgage creditors. The Chancellor, on a former application, made no decision further than that, as the law then stood, he had no power to make the order prayed for.

In my judgment, the affidavits taken in this case, and the nature of the property, show, beyond all question, that the property of this insolvent corporation is rapidly deteriorating, and is becoming of less value every day.

There is a great contrariety of opinion among the witnesses whose depositions have been produced, as to the best mode of making this sale; whether the property should be put up as a whole and sold as it stands, with all its machinery and fixtures, as a factory for the manufacture of arms and ordnance, or whether it should be sold by piece-meal. The inclination of my mind, after examining the affidavits, looking to the reasons given, in connection with the situation and value of the property, is to the opinion that it is not probable, purchasers could be found for the property as a whole, and that necessarily it must be broken up and sold separately.

But it is not necessary, under the view which I take of this application, to settle definitely at this time the precise mode

of sale. The receiver is an officer of the court, selected as disinterested and impartial towards the parties in respect to the matters in controversy. As such officer, acting under oath, entitled to the instruction and indemnification of the court whilst proceeding fairly and honestly in the discharge of his duties, it is the policy of the statute that he should be invested with large discretionary powers, and if this application can be granted, I am of opinion that the receiver should be directed to proceed and sell the real and personal property, either in bulk or in detached parts, as he may find it expedient. He may find it expedient and for the advantage of his trust to sell the real estate, with a certain part of the machinery, together, and the residue of the machinery, tools, and personal property in lots; or he may find it most for the interest of those concerned to sell all the machinery, fixtures, and tools in detached lots. Satisfied that it is not only the duty but the desire of the receiver to make this property produce the most money possible for those entitled to the proceeds, my opinion is that the mode of sale should be left to his discretion; the utmost possible publicity to be given however, to the time and mode of sale. It being further understood, that as the proceeds are to be distributed among lien creditors and general creditors, those proceeds which may arise from property subject to liens, should be accurately ascertained and distinctly preserved in the accounts of the receiver.

But this application has been earnestly and ably resisted on the part of the lien creditors, not only on the ground of expediency, but also on the ground of the alleged want of legal power in the court. It is urged that the act of March 13th, 1866, impairs the obligation of contracts, and further, that it deprives the mortgage creditors of a remedy for enforcing their contract which existed when the contract was made, and that, therefore, as against them, the law in question is unconstitutional and void. *Const., Art.* IV, *Sec.* 7, § 3.

I am unable to see that this act in any way impairs the obligation of the contract. The rights of the mortgagees

stand unaffected by the act of 1866, or by any proceedings under that act. The proceeds of any sale made in pursuance of the powers vested in the court, are to be brought into court, there to remain, pending the litigation, subject to the same liens and equities of all parties in interest as was the property before sale. It is scarcely necessary to refer to the numerous cases cited by the counsel on both sides, on the constitutional question. If there is any difficulty, it arises from that clause in our constitution, originating in, if not still peculiar to it, which forbids the legislature to deprive a party of any remedy for enforcing a contract which existed at the time the contract was made. The construction of this clause is still to be settled; the case of *Martin* v. *The Somerville Water Power Co.*, 5 *Am. Law Reg.*, (*May*, 1857,) *p.* 400, scarcely reaching the point as here presented.

The cases of *Bronson* v. *Kinzie*, 1 *Howard* 311, and *McCracken* v. *Hayward*, 2 *Howard* 608, satisfactorily established the doctrine, that whatever belongs merely to the remedy might be altered or taken away according to the will of the state, provided the alteration did not impair the obligation of the contract. But if that effect was produced, it was immaterial whether it was done by acting on the remedy, or directly on the contract itself. In either case it was prohibited by the constitution. In those cases it was held that state laws, which, in form professing to effect the remedy merely, yet in their operation amounted to a denial and obstruction of rights under contracts, as respected contracts made before the passage of such acts, were unconstitutional and void.

It is probable this clause in our constitution was introduced in reference to the principle settled in the cases to which I have referred, and possibly as declaratory of that principle, and to give it greater certainty in its application. The form of expression used is to be noted. It is that the legislature shall not pass any law *depriving* a party of any remedy for enforcing a contract, &c.; it is only the *depriving*, or taking away a substantial remedy previously existing for the en-

forcing of a contract. It does not, in my judgment, relate to any change of practice in reference to remedies, as the making of a longer or shorter notice necessary, dispensing with or adding to the formalities necessary in legal actions, &c. Nor, as it seems to me, is it within the terms of the constitutional provision, and it does not deprive one of a previously existing remedy, that such remedy has been suspended and made unnecessary by some remedial statute which gives him satisfaction in a shorter time and more direct mode.

Now here, by the act to prevent frauds by incorporated companies, a remedial act for the protection of their creditors by proceedings in the nature of bankruptcy, the operations of insolvent corporations are abruptly brought to a full stop. Their property is taken in charge by officers of this court. Without disturbing liens, or destroying the priority of mortgage and judgment creditors, the property and assets of such corporation, so in the custody of the law, are to be sold, and the funds distributed among creditors proportionally to the amount of their respective debts. This act has been long in force. It has often superseded, but not destroyed, remedies rendered unnecessary by its remedial and beneficial provisions. But as in the case before us, the mortgage liens may be disputed. The consequent litigation may by possibility be tedious, and extend through a considerable period of time, whilst the property may be liable to deterioration. During the delay the property so held may be subjected to great injury and consequent loss, if it must be held in the same form until the litigation is closed, and the rights of the parties ascertained. Can it be said to deprive a lien creditor whose claim is in whole, or in part, in dispute, of any previously existing remedy, that this remedial statute is extended to meet such an exigency, his lien or preference if established, being preserved to the proceeds of the sale?

It may also be suggested, that under these bankrupt proceedings, the whole jurisdiction in respect of the property of the corporation is vested in and belongs to the court in which, under the statute, these proceedings have been commenced.

2 L*

Any attempt to proceed elsewhere by foreclosure or other-
wise, may be met by plea, whilst it would still be competent
and perhaps expedient for the mortgage creditors, by cross-
bill, or by bill in the nature of a cross-bill, in the same court,
to vindicate their rights, and to ask such redress as their
case may require.

This case stands on such different footing from that under
the private act of the legislature discussed by Justice Grier,
in the case of *Martin* v. *The Somerville Water Power Com-
pany*, that I do not think it necessary to add anything further
under this head.   I am of opinion that there is no want of
legal power arising out of the constitutional provision, and
that the mortgage creditors have not been deprived of any
remedy previously existing.  I should hesitate, if I considered
the point doubtful, to declare the act of the legislature in-
operative on this ground, and could only do it if I considered
it beyond question.   But my mind has fully arrived at a
different conclusion.

The receiver, in his petition, prays to be instructed as to
the lien of the mortgage as respects the machinery and per-
sonal property, and whether lost by the omission of the
mortgagee to re-file within the time limited by the act of 1864,
concerning chattel mortgages.   *Pamph. Laws, p.* 493.

I am not aware that under the rule in this cause I can
now authoritatively decide this question.  I can, however, ex-
press my views as the reasons for settling to a considerable
extent, the mode under which I consider the sale ought to
be made.

Both mortgages to which I have referred, in terms sub-
stantially the same, purport to convey in pledge, all the
buildings, factories, and shops, &c., with all the machinery,
fixtures, engines, tools, and property of every kind, on the
premises.   The question now to be discussed, I suppose how-
ever to arise, chiefly, if not altogether, under the second
mortgage. It seems to be assumed in the petition filed by the
receiver, as also in the argument of his counsel, that the
machinery and fixtures in this factory could be subject, as

against other creditors and against the receiver, to the lien of this second mortgage, only as a chattel mortgage, and that such lien was necessarily lost by the failure to file a second copy of the mortgage, as prescribed by the act to which I have referred. Possibly this might be so, if the assumption were true that the machinery, &c., could only be held by this mortgage as a chattel mortgage, though I have some difficulty in my own mind in coming to this conclusion. It may admit of question whether, when this property, by virtue of this statute of bankruptcy and under the decree of the court, passed into the custody of the law, and was held by the receiver as the trustee of the corporation and of its creditors, the rights of all parties were not fixed at that very instant. Without attempting to decide it, as the point has not been argued by counsel, I suggest it as doubtful, whether the holder of a chattel mortgage is held to further diligence and is not entitled to rest upon his rights, whatever they were, when the property passed into the hands of a receiver, his trustee, as well as the trustee of the other creditors and of the corporation.

But I do not assent to the proposition that the machinery and fixtures comprised in the terms of the mortgage are in this case to be held and treated as personal property, or that the mortgage in respect of them, is to be treated as a chattel mortgage.

Whether property, which ordinarily is treated as personal, becomes annexed to, and goes with the realty as fixtures or otherwise, must depend upon the particular circumstances of each case. The rule, as is well known, is differently applied, as the question may arise between landlord and tenant, heir and executor, mortgagor and mortgagee, &c. The rules which relate to trade fixtures, as between landlord and tenant, have but slight application to questions between grantor and grantee, in the case of mortgage or other conveyance. It was held, in a well considered case, expressly approved in our own courts, that the true criterion of a fixture might appear in the application of the following requisites: 1. By

actual annexation to the realty, or something appurtenant thereto; 2. By their application to the use or purpose to which that part of the realty, with which connected, was appropriated; 3. By the *intention* of the party making the annexation, to make a permanent accession to the freehold. Under this head of *intention* may be the annexation of fixtures by the agreement of the parties, as in a mortgage by such general or specific description as shall evince an intention to convey fixtures as a part of the freehold. Thus, in the conveyance by mortgage or otherwise, of a factory or mill, by any general name or description, with all its machinery, fixtures, and tools, such a factory or mill, with all its machinery and fixtures, and all necessary parts of the establishment, however slightly annexed, will pass with the freehold by such description. And things ordinarily personal in their nature, but fitted and adapted to be used with the real estate, and necessary for its beneficial enjoyment in the character in which conveyed, will pass with the realty by such description, which would not pass by an ordinary conveyance of land with its appurtenances. It is because of the intention evinced by such description and such terms, that they will pass. *Teaff* v. *Hewitt,* 1 *Ohio State R.* 511; *Ibid.* 1 *Am. Law Reg.* (*Oct.*, 1853), *p.* 723; *Brearley* v. *Cox,* 4 *Zab.* 287; *Crane* v. *Brigham,* 3 *Stockt.* 35; *Mather* v. *Fraser,* 2 *Kay & Johnson* 536; *Waterfall* v. *Penistone,* 6 *Ellis & Black.* 876; *Walmsley* v. *Milne,* 7 *J. Scott, N. S.,* (97 *Eng. Com. Law*) 114.

The mortgage now in question, purports to convey the factories and shops, with all the machinery, fixtures, engines, tools, &c.; which, I suppose, under the authorities cited, conveyed at least all the machinery, fixtures, &c., going to make up a factory of the character referred to in that instrument. In addition, more tools as well as materials and other property seem to have been pledged, to cover which it was necessary to file a copy of the mortgage in the clerk's office of the county. But so far as the machinery and fixtures were annexed to the realty, they passed as realty, and it was

unnecessary, in order to complete the lien as against them, to file a copy of the mortgage, as a chattel mortgage.

In England, the statute of 17 and 18 *Vic.*, *c.* 36, requires the registration, in a mode prescribed, of bills of sale of chattels, by mortgage or otherwise, as against creditors, &c., the possession remaining in the vendor. It was there held under that act, one much resembling our own, that registration, as a chattel mortgage, was not necessary to pass the interest in machinery fixed to the soil and comprehended in a mortgage of the realty, the intention of the parties, as shown by the terms of the instrument, being that the machinery should pass with, and as a part of the freehold. *Mather* v. *Fraser*, 2 *Kay & Johnson* 536; *Waterfall* v. *Penistone*, 6 *Ell. & Black.* 875. In the latter, the principle decided in the first case was recognized, but it was held not to be within it, the intention appearing on the face of the instrument, to mortgage the machinery separately, as personal property.

After inspecting the inventory filed by the receiver, I am unable, from anything before me, to discriminate between what is fixed machinery and passed with the realty, and what is mere personal property, and may, therefore, be unaffected by the mortgage.

In the order for the sale, which I shall recommend to be made, I would, therefore, have the receiver instructed to sell in such mode as that the proceeds of each class or description of the property may be readily discriminated, and the proceeds may be distributed according to the rights of the respective creditors, to be ascertained hereafter in this cause.

I respectfully recommend that the Chancellor order and direct the receiver to sell all the property and assets of the company, as authorized by the act of the legislature; that such sale be made in such mode and parcels, in bulk or in detached parcels, as he may deem most advantageous, provided, however, that the machinery and fixtures, and the tools, material, and other personal property, be sold separately, in such mode as that the proceeds of the sales of each descrip-

tion of property may hereafter be distributed among the lien creditors and general creditors, according to the rights of the several creditors, when ascertained; that all publicity possible, be given to the time and mode of sale; and that the proceeds of such sale be brought into court, to abide the further order of the court.

NOTE.—This opinion was delivered at May Term, 1866, but is reported in this volume, in order to present together the history of the case. The opinion on appeal from the decree of the Chancellor, delivered at November Term, 1865, is reported *post.*